and Carrier Accommodations. And Mr. Freiberger. Good morning, Your Honors. Rolf Fiebiger, on behalf of Joint Appellants, Michael Rasmus, doing business with Carrier Accommodations. This is Harbor's Edge Motel and Carrier Accommodations, LLC, doing business at Seagull Bay Motel. May it please the Court. Succinctly put, the question before the Court today is, what's it to you? Parties have submitted pages of briefing on various issues surrounding this case, but the crux of the issue boils down to that question, what's it to you? The burden of proof on that question is on the plaintiff. What's it to you? Why does it matter to you? What impact did this action that allegedly violated a federal statute or federal regulation have on the plaintiff personally? The standing cases, cases from this Court, from Bond to Carrello to Casillas to the Supreme Court, and Spokao, and up to TransUnion from just a few months ago, have repeatedly and consistently distilled that question down to, of the injury and fact analysis, down to that one simple question. And we now, counsel, have case law from other circuits on the standing question for this very plaintiff. Yes, Your Honor. So we would be creating a circuit split to affirm the district court's determination here that the plaintiff does have standing. That's correct. So there needs to be a pretty powerful reason to do that. Yeah, I would agree, Your Honor. You're arguing that we should follow that case law, so perhaps you could focus your arguments on the plaintiff's attempts to distinguish this case from our own circuit precedent and arguments to depart from the emerging circuit consensus that this plaintiff lacks standing. Absolutely, Your Honor. So the law firm focuses on three main Supreme Court cases, Havens Realty, Aikens, and Public Citizen. Havens Realty, first of all, Public Citizen is a case, I guess Public Citizen and Aikens, they're both related to requests for information of publicly available documents. Aikens, they were looking for information about judges, and then in Public Citizen it was a FOIA request. In both of those cases, the plaintiffs in those cases could articulate a specific injury, a specific purpose that they had for the information that they were deprived. That was what the Supreme Court said allowed them to proceed with their cases. In Havens Realty, which as I said in my briefing, I think is about as close a comparator as you can get to this case, but we still believe it is distinguishable. Havens Realty has a very, has a personal impact on the plaintiff in that case. The black tester went to an apartment to ask if an apartment was available. He was told it was not. A white tester went to the same apartment to ask if the apartment was available. The white tester was told it was. It's a very specific discrimination. It's... But he had no intention of renting that apartment, right? That's correct, Your Honor. So, I mean, Havens Realty does seem to me to be a problem for you. It's pretty close. So what's so different here? This plaintiff says, I've got a right to this information. Everybody's got a right to this information. The statute's written as broadly as the Civil Rights Act or the Fair Housing Act was, right? Yeah, correct, Your Honor. And that is why we think it's a pretty close case. We do... The distinction is, as you also look at some of the ADA tester cases, the person actually went and experienced that discrimination for themselves. And the... I apologize. Oh, and when you're talking about architectural barriers, that's perfectly understandable, right? Right. But that's not what we've got here. We don't have an architectural barrier. What we had in Harbor's Edge, no, I'm sorry, what we had in Havens Realty is, if we're looking at the Fair Housing Act, right? So I think my comparator there is in the Title VII, where you have an instance of direct discrimination. In this case, there's no specific, actual, there's no discrimination, there's no difference in the information that was provided to anybody, and so now it's on the plaintiff to say, here is why this affected me, here is why this is a problem for me. And Loffer, in her complaint, has not, has admitted that there was no difference in terms of how it actually personally affected her. All she was doing was going from website to website to see if they had the information available. And under the standing precedence, that's not enough to show an injury, in fact. You know, from Robertson and Corrello, they talk about the information that is not available to the plaintiff needs to be for some substantive purpose. There's a yes and. TransUnion also talks about downstream consequences. There needs to be something that happens as a result of this lack of information in order to bring a case in federal court. Loffer admits there was no downstream consequences. The other thing that we pointed out in our initial briefing is that the regulation itself actually only covers reservations. The regulation is only for people who make reservations on these websites or phones or websites. If Loffer did not intend to make a reservation, she doesn't fit inside the box of the regulation itself. One of the other arguments that Loffer makes is that, is about an intent requirement and whether there has to be an intent under the statute. And our contention is that in this instance, it is an intent requirement, but that's not what, that's not what the barrier is for Loffer. It happens to be her intent to book a room, but it boils down to, again, there being a  Mr. Feebiger, can I ask you, help me out here. If I look only at the statute, it looks like, it looks to me like she falls within the scope of the statute. The reg, I'm not so sure about. The constitution, the constitutional requirements, a different question altogether from the statute. So, where are you aiming your argument? All three, the constitution, the statute, and the reg, mainly the constitution, where are you on this? Sure, your honor. I think, I think mainly she doesn't have constitutional standing. I think based on what's in the complaint, we have to accept the complaint as true. She affirms that she is disabled, I have no information to doubt that, any argument that she doesn't fall under the statute. I don't think she necessarily falls under the regulation either, but I think the more important question is whether this kind of action has constitutional standing. Um, the, one of the other arguments that Laffer makes is that the, um, statute permits her to proceed with this case and that she has standing based on what is included in the statute. Um, you know, the case law from TransUnion to Corello to all of those different cases talk about that a statute cannot in and of itself create Article III standing. Spokeo said that. Um, and Congress can't step across and go farther than what the constitution permits. You still need to look at whether there is a concrete and particularized injury, and in this case, Ms. Laffer has not alleged a concrete or particularized injury. What are we to make of her declaration? Her declaration, um, still says the same, contains basically the same information. It says that she intends to come to Wisconsin, in this case at some point, um, which is not sufficiently particularized to tell us when she's actually going to come. We have cases from this circuit like the Shur case where, um, a woman traveled to a hotel that she had been, um, she experienced a bathroom door that she couldn't get open and she found out that, you know, 50 other Courtyard Marriott's had the same, um, had the same doorway. And she sued in, um, in Illinois and this court found that, yeah, she has standing to sue, um, the one Courtyard Marriott that she has been to, but does not have standing to bring the case against the other Courtyard Marriott's that she had never been to, has no intention of going to, um, and, and so let her proceed just against the one Courtyard Marriott. Um, the... Is the declaration plausible in light of what we know of the litigation history? There are more than 550 of these suits around the country. That's, that's correct. I think that... I mean... Injects a reality check on the... In my, in, in our briefing, we talk about the, the potential, um, on plausibility of that, uh, declaration, um, and so if we are looking at it as a, um, a factual attack on standing, um, I don't, I don't think that Ms. Loffer, um, in, in the state that she is in where she... I don't know if anybody could, could get around to, um, 15 different states, um, in all corners of the country, um, very quickly, so... At 550 hotel chains? That's correct, Your Honor. Or individual hotels? Individual hotels. Correct, Your Honor. Um, I believe that my, um, I believe that my time is running beyond my, uh, three minutes I had requested for... That's fine. You can reserve. Okay. All right. Thank you. Thank you so much. Uh, Mr. Baker, can, can you hear us and see us? Yes, Your Honor. All right. I must... You may proceed. Can you see me? Yes. If I could, may it please the Court, if I could distill this in an opening statement to, uh, to, to, to cut to the chase and, and try to boilerplate the laws as best as possible in a succinct fashion. Courts are divided on the issue, and their decisions have turned on whether or not Havens Realty applies and whether or not Spokio, which was the only decision that was in existence at that time when most of these decisions came out, whether or not Spokio, uh, supports the imposition of an additional injury requirement. Well, the appellate courts are not divided on this. The appellate courts that have weighed in on your, uh, client's standing, um, have held that she doesn't have standing. Well, for example, the D.C. Circuit Court in Allamack simply said C. Spokio. Uh, it did not acknowledge . . . The Court adopted the lower court's opinion in that case. So we take the lower court's opinion as the opinion of the Court of Appeals, which completely, um, was completely consistent with the Fifth Circuit's ruling in the Mann case. In the Mann case, uh, all these cases, including Mann, Mann makes the same mistake as the other courts, and all these cases, including Mann, um, make the same, make the same misinterpretations of law. Mann was unique in the sense that they all hold that Havens Realty does not apply, despite the fact that, uh, six, that two different circuits, Houston v. Merritt, the Tenth Circuit and Tandy held that Havens Realty does apply. Five circuits have followed Houston v. Merritt, um, basically holding that testers have standing and that intent is irrelevant, and that is premised on the applicability of Havens Realty. I'm sorry. I'm not following. As far as I know, there are only two Court of Appeals that have ruled on your client's standing, and both have held that she lacks standing, and the allegations in this case are materially the same, in fact, identical. So you are, you are asking us to create a circuit split, and there needs to be a powerful reason to do that. And the basic issue is whether or not Havens Realty applies. Mann held that Havens Realty does not apply, putting it in conflict with the other six circuits which held that it does apply to the ADA. There are six circuits that have held that your client has standing. There are zero. There are two circuits that have held that your client lacks standing. If I could step in here, Mr. Bacon, as I understand it, the, um, you're arguing kind of at a fairly abstract level, does Havens Realty apply under the ADA? I'm not sure that's subject to a universal answer, but in the Houston against Merritt Supermarkets case, the plaintiff had physically been to the supermarket in question. He was challenging architectural obstacles, and he offered testimony that the court did not discount. It's quite plausible that he was going to be going back, and probably that chance was about 100% that he would be experiencing the same obstacles again, and so they found standing. That's not hard to distinguish from this case. So how far does that take you, given the cases that Chief Judge Sykes has pointed out? In Houston versus Mann, or Houston versus Merritt, the issue was whether or not he had encountered discrimination with respect to equal access to facilities. In this case, the issue is whether or not he's deprived of equal access of services, advantages, or privileges. All are equally enumerated in Section 12182A. If I could just address the Mann case, Mann focused on the wrong plaintiff. Mann said that the plaintiff in Havens Realty had, uh, the information had some relevance to them. It didn't. He was looking at the wrong plaintiff. Plaintiff Coles did, in fact, intend to rent an apartment, so the information had relevance to him. However, Havens Realty also discussed Plaintiff Coleman, who was strictly a tester and did not intend to rent an apartment, and it held, nonetheless, that he had standing under the straight interpretation of the statute. The Tandy decision from the Tenth Circuit, the Merritt decision, is not based on whether or not the person intended to go to the facility. That's not what makes it distinguishable. What makes it critical is whether or not they must have been a bona fide patron, they must have intended to be a customer, they must have, uh, what is their intent or state of mind and can a court impose an intent requirement, or must it, um, may it, uh, or must it apply the literal terms of the statute. With respect to TransUnion, which has not really been fully, with respect to TransUnion, the Supreme Court recently discussed the issue of downstream consequences, and it discussed, it cited the Casillas case, it cited the Tritchell case out of the Eleventh Circuit, and the Supreme Court discussed the importance of downstream consequences and of additional injury, but it drew the line at civil rights cases. At 141 Supreme Court Reporter 2204-2205, it cited Allen v. Wright for the point that discriminatory treatment was one of those injuries that Congress, by statute, could create, um, as concrete and de facto. So, whereas Spokio specifically acknowledged that being deprived of the right to information is fully actionable with nothing additional required, and this court reiterate, reiterated that in Carrello. The TransUnion case said the same thing with respect to discriminatory treatment. So, this court in Casillas and the Eleventh Circuit's court case in Tritchell, which were both cited by the, um, by the TransUnion court with respect to downstream consequences, both discussed whether or not Havens Realty applies, or whether or not downstream consequences apply. And they also said that the line is drawn at whether or not we're talking about a civil rights case. The Fair Credit Reporting, the Fair Credit Reporting Act is not a civil rights case. The Fair Debt Collection Practices Act is not a civil rights case. And under TransUnion, Tritchell, and Casillas, those analyses do not apply to instances involving a civil right. If the Supreme Court had intended to overturn Havens Realty and the vast body of civil, of authorities which have recognized that testers have standing in civil rights law, going back to the 50s and 60s, it would have said so rather than leave it to a strained interpretation by lower courts. Spokio was not a civil rights case. TransUnion was not a civil rights case. The nature of the injury, for one thing, is different. In something like the Fair Debt Collection Practices Act, where you have a, you know, there's a question of whether or not there's additional injury concerned. Whether or not, you know, the issue there presented is that the lack of information was by itself injury. However, in the ADA, injury, being deprived of information under the statute, under the regulation, and that's to be accorded the controlling weight of law under the Chevron analysis, means that a plaintiff has been deprived of full and equal enjoyment of a service, privilege, or advantage of the place of public accommodation. In Houston v. Merritt, he would have been instead deprived of a facility. The Tandy case, however, did involve TTT and communications. That was not related to a facility. The statute also defines such things as failure to fully participate in all aspects of society, isolation, segregation, inferior status, deprivation of equality of opportunity, that discrimination includes areas of communication. In the recently, the 11th Circuit, applied injury in the context of website discrimination, not online reservation service, but website discrimination, held that a tester would have had standing, and it's cited Allen v. Wright, which is the same case cited by the Supreme Court in TransUnion. Holding the discrimination by itself is a stigmatic injury, which is one of the most serious consequences of discrimination. I would submit that the TransUnion court, by expressly carving out civil rights cases from its requirement of additional injury, and the fact that the Spokio court specifically carved out being deprived of the right to information from the additional injury requirement, disposes of the matter. Now, with respect to Havens Realty, Havens Realty held that a tester had standing to sue for being deprived of his right to information, even though he had no intention of doing anything with that information. That was Plaintiff Coleman. Remember, Mann Court focused on Coles, the wrong plaintiff. Based, the ADA was promulgated several years after Havens Realty, and Congress incorporated the same operative language, namely, any person. Based on that any person operative language, the 10th Circuit in Tandy, and then the 11th Circuit in Houston v. Merritt, held that intent cannot be imposed and testers have standing. It did not matter whether they were talking about encounter with physical facilities or which section of the ADA they were talking about, as long as it was not the clients or customer section. If, for example, the Department of Justice had promulgated this regulation under the clients or customer subsection, then I would have no argument. We would not be here today. But as the, but Houston v. Merritt, which held that testers have standing under the ADA, under the general provision, 12182A, the same general provision that applies to services, advantages, and privileges. Held that testers have standing under that subsection, five other circuits have followed it, albeit not the 5th Circuit in Mann, and not this circuit, but five other circuits have followed it. So, to the extent that Mann held that Havens Realty does not apply, puts it in conflict with the other six circuits that it does apply with respect to whether or not a court can impose an intent requirement or state of mind requirement. If one looks at, compares Havens Realty to the other, Spokio and TransUnion, Havens Realty stands for, it's a civil rights case. Congress can create that right because it's a civil rights case and because they use the court must apply the rules of statutory construction and prudential standing barriers do not apply. A plaintiff has standing to be interpreted as broadly as the Constitution allows, unlike other instances such as the Fair Debt Collection Practices Act. Under Havens Realty, the court applies the rules of statutory construction and reads the statute literally. And if the plaintiff has a cause of action, has suffered injury, then he has a cause of action. And their intent cannot be imposed as a requirement. Under Spokio, however, and TransUnion, the court can go beyond the statute and hold that, well, Congress did not have this right to raise this to the level of concrete de facto injury, such as a bare procedural violation involved in the Fair Credit Reporting Act, which didn't harm anybody, which is as opposed to discrimination, which does. In the Spokio and TransUnion context, a court can and should go beyond the plain words of the statute and look to see whether or not there was some sort of additional injury or in the discrimination context, a plaintiff who's in a civil rights case suffers discrimination because they had been deprived of the right to information. They have injury. And if I could add, although it's not on the record, Plaintiff Laufer did, in fact, make good on her promise. In July, she actually did go through Georgia, through Texas, to Colorado, back across the over to Maine, New York, Pennsylvania, and South through those states, then back down to Florida. Although that's not an issue that we're raising because strictly we're talking about Tester standing here. All right. Thank you very much. Mr. Feeberger. Thank you, Your Honor. We heard a lot of different information about Haven Realty. But the overarching principle is that from TransUnion to the D.C. Circuit Court to Mann, the courts that have addressed this, the courts that have talked about standing under statutes say there needs to be adverse effects. There needs to be downstream consequences, that bare procedural violations do not create standing. If the ADA actually said that even if the regulation is something that could be addressed in court, the plaintiff still has to have experienced an injury. The lack of information in and of itself is not an injury. There has to be downstream consequences. The Tester in Haven's Realty experienced a concrete and particularized injury. They did in Akins. They did in Public Citizen. They did in Murad. And part of the class did in TransUnion, but the majority of the class did not in TransUnion. There was no concrete and particularized injury, so they did not have standing. The same here. Laufer had no intention to do anything with the information. The lack of information had no effect on her whatsoever, and she does not have a case that is in the United States. The, that is what it comes down to, Your Honors, effectively, and the hotels respectfully ask this court to find that Laufer has not suffered injury and facts sufficient to proceed in federal court. Thank you very much. All right. Thank you very much. Our thanks to both counsel. The case is taken under advisement, and we'll move to